IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


WALLACE M. FOX,                      )
                                     )
              Plaintiff,             )
                                     )    CIVIL ACTION
v.                                   )
                                     )    No. 06-2186-CM-JTR
                                     )
MICHAEL J. ASTRUE,[1]                )
Commissioner of Social Security,     )
                                     )
              Defendant.             )
_____)


REPORT AND RECOMMENDATION

      Plaintiff seeks review of a final decision of the
Commissioner of Social Security (hereinafter Commissioner)
denying supplemental security income under sections 1602 and
1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a,
and 1382c(a)(3)(A)(hereinafter the Act).  The matter has been
referred to this court for a report and recommendation.  The
court recommends the Commissioner's decision be REVERSED and the
case be REMANDED for proceedings consistent with this opinion.

I.  Background

_____

      [1]On Feb. 12, 2007, Michael J. Astrue was sworn in as
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is
substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C.
§ 405(g), no further action is necessary.

Plaintiff's application for supplemental security income was denied initially and upon reconsideration.  (R. 16, 24, 25).  Plaintiff requested and on Nov. 2, 2005 was granted a hearing before an Administrative Law Judge (ALJ).  (R. 16, 37, 263-85).  At the hearing, plaintiff was represented by an attorney, and testimony was taken from plaintiff and a vocational expert.  (R. 16, 263, 264).  On Dec. 29, 2005, the ALJ filed a decision in which he found that plaintiff has not been under a disability at any relevant time, and denied his application.  (R. 16-23).

The ALJ found plaintiff has not performed substantial gainful activity since his alleged onset and has severe impairments consisting of "degenerative joint disease of the right knee; personality disorder, untreated; and borderline intellectual functioning/mild mental retardation, not established prior to age 22."  (R. 17).  The ALJ discussed plaintiff's contention that his condition meets or equals Listing 12.05(C), and determined that it does not because "the evidence does not support that claimant had 'significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental perdios [sic].'"  (R. 17).

He considered plaintiff's testimony and other relevant evidence including medical source opinions, determined that plaintiff's allegations of disabling symptoms are not credible,

-2-

and assessed plaintiff's residual functional capacity (RFC).  (R. 17-21).  The ALJ determined that plaintiff has the capacity to lift twenty pounds occasionally and ten pounds frequently; to stand/walk fifteen minutes at a time for two hours total in a workday; to sit forty-five minutes at a time for six hours total in a workday; to occasionally climb ladders or scaffolds, and to work at heights, balance, stoop, kneel, crouch, and crawl; and is moderately limited in the ability to understand, remember, and carry out detailed instructions, and to interact appropriately with the public.  (R. 21).  He found that plaintiff has no past relevant work, but that he is able to perform other work which exists in significant numbers in the local and national economies, and is, therefore, not disabled within the meaning of the Act or regulations.  (R. 21-22).  Consequently, he denied plaintiff's application.  (R. 23).

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a

preponderance, it is such evidence as a reasonable mind might accept to support the conclusion.  Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 1382c(a)(3); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and inability to work must last twelve months).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R.

§ 416.920; <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir. 2004); <u>Ray</u>, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). <u>Id.</u> at 750-51.  If the claimant's condition does not meet or equal a listed impairment, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920.  This assessment is used at both step four and step five of the process.  <u>Id.</u>

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform his past relevant work, and whether he is able to perform other work in the national economy.  <u>Williams</u>, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

### III. Step Three, Listing 12.05(C)

Plaintiff claims the ALJ's step three finding that plaintiff's condition does not meet or equal Listing 12.05(C) did not apply the correct legal standard and is not supported by substantial evidence in the record. (Pl. Br., 14). Specifically, plaintiff claims he has a valid verbal IQ score of 69 which must be presumed to have been constant throughout life, and that he has other severe impairments consisting of personality disorder and degenerative joint disease of the right knee, and, therefore, he meets the criteria of Listing 12.05(C) and must be found disabled as a matter of law. (Pl. Br., 14-17). The Commissioner argues the ALJ properly determined that plaintiff does not meet or equal Listing 12.05(C) because plaintiff has never been diagnosed with mental retardation and the evidence supports the ALJ's findings (1) that plaintiff presents no evidence of significantly subaverage general intellectual functioning with deficits in adaptive functioning manifested before age twenty-two, and (2) that the IQ scores reported by Dr. Boraks are not credible evidence of Plaintiff's intellectual function. (Comm'r Br., 4-7). Moreover, the Commissioner argues that the ALJ's credibility finding is supported by substantial evidence in the record and weighs against a finding that plaintiff's condition met or equaled Listing 12.05(C). <u>Id.</u>, 7-8.

**A.    Standard Applicable to Listing 12.05(C)**

The "Listing of Impairments" describes certain impairments
that the Commissioner considers disabling.   20 C.F.R.
§ 416.925(a); <u>see also</u>, 20 C.F.R., Pt. 404, Subpt. P, App. 1.   If
plaintiff's condition meets or equals the severity of a listed
impairment, his impairment is conclusively presumed disabling.
<u>Williams</u>, 844 F.2d at 751; <u>see Bowen v. Yuckert</u>, 482 U.S. 137,
141 (1987) (if impairment "meets or equals one of the listed
impairments, the claimant is conclusively presumed to be
disabled").   However, plaintiff "has the burden at step three of
demonstrating, through medical evidence, that his impairments
'meet <u>all</u> of the specified medical criteria' contained in a
particular listing." <u>Riddle v. Halter</u>, No. 00-7043, 2001 WL
282344 at *1 (10th Cir. Mar. 22, 2001) (quoting <u>Sullivan v.
Zebley</u>, 493 U.S. 521, 530 (1990) (emphasis in <u>Zebley</u>)).

"The [Commissioner] explicitly has set the medical criteria
defining the listed impairments at a higher level of severity
than the statutory standard.   The listings define impairments
that would prevent an adult, regardless of his age, education, or
work experience, from performing <u>any</u> gainful activity, not just
'substantial gainful activity.'" <u>Zebley</u>, 493 U.S. at 532-33
(emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)).
The listings "streamlin[e] the decision process by identifying
those claimants whose medical impairments are so severe that it

is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153.  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Listing 12.05 provides, in relevant part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period:  i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

> . . .

> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05.  Listing 12.05 is somewhat different than the other listings for mental disorders. Id., § 12.00(A).  The listing contains a diagnostic description of mental retardation (introductory paragraph) and four sets of criteria describing listing-level severity (Paragraphs A through D).  20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 12.00(A), 12.05(A-D).  There are four distinct ways in which a claimant may establish disability pursuant to listing 12.05.  Id.; McKown v. Shalala, No. 93-7000, 1993 WL 335788, *1 (10th Cir. Aug. 26,

1993).  To meet the listing, plaintiff must show that his
condition satisfies <u>both</u> the diagnostic description of mental
retardation <u>and</u> one of the four severity criteria.  <u>Id.</u>,
§ 12.00(A).[2]

The regulations provide that where verbal, performance, and
full scale IQ scores are derived from a test, the lowest score of
the three will be used when considering 12.05(C).  20 C.F.R., Pt.
404, Subpt. P, App. 1 § 12.00(D)(6)(c).  If the claimant has an
additional physical or mental impairment(s) which is "severe"
within the meaning of 20 C.F.R. § 416.920(c), it will be
considered to impose an additional and significant work-related
limitation of function in accordance with Listing 12.05(C).  20
C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00(A); <u>see also</u>, <u>Hinkle v.
Apfel</u>, 132 F.3d 1349, 1352-53 (10th Cir. 1997) (reaching the same
conclusion before the regulations were changed in 2000 to specify
the equivalence between "severe" impairments and "additional and
significant work-related limitation of function.")  Therefore, to
meet Listing 12.05(C), a claimant must show:  (1) evidence of

_____

[2]The court notes that plaintiff's brief quotes Listing
12.05(C) as it appeared before amendment in Sept. 2000.  (Pl.
Br., 14); <u>compare</u> 20 C.F.R., Pt. 404, Subpt. P, App. 1,
§§ 12.00(A), 12.05 (2000) <u>with</u> 20 C.F.R., Pt. 404, Subpt. P, App.
1, §§ 12.00(A), 12.05 (2001) and later.  In the Sept. 2000
amendment, the Commissioner made clear that an impairment must
satisfy the diagnostic description for mental retardation in the
introductory paragraph of Listing 12.05.  65 Fed. Reg. 50746,
50776 (Monday, Aug. 21, 2000); <u>Barnes v. Barnhart</u>, 116 Fed.
App'x. 934, 938-39, 2004 WL 2681465,*4 (10th Cir. 2004).  The
present case was decided Dec. 29, 2005, after the 2000 amendment.

onset of mental retardation before age twenty-two, (2) a valid IQ score of 60 through 70, and (3) another severe impairment.

**B.    The ALJ's Findings**

At step three, the ALJ found plaintiff's condition does not meet or equal Listing 12.05(C) "because the evidence does not support that claimant had 'significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental perdios [sic]; i.e., the evidence demonstrated [sic] or supports onset of impairment before age 22', as required by the regulations."  (R. 17)(quoting 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05).  The ALJ noted both plaintiff's testimony that beginning in sixth grade all of his classes were special education classes (R. 17), and his contradictory statement on a disability report that he completed twelfth grade in 1985 and was <u>not</u> in special education classes.  (R. 18).  The ALJ found plaintiff not credible (R. 20), but he did not make a finding that plaintiff did <u>not</u> attend special education classes.  He noted Dr. Vandenberg's opinion that plaintiff did not appear retarded.  (R. 19)(citing Ex. 3F).

He noted Dr. Boraks's testing which revealed a Verbal IQ score of 69, Performance IQ score of 78, and Full Scale IQ score of 71, "ranging from borderline intellectual functioning to mildly mental retarded for the Verbal IQ."  <u>Id.</u>(citing Ex. 16F). He discussed Dr. Boraks's evaluation.  "Dr. Boraks, who saw

claimant at the request of his attorney, gave testing results may
be accurate [sic], but based on the evidence as a whole, and the
fact that there is no evidence of mental retardation prior to age
22, the undersigned finds Dr. Boraks' testing results do not
demonstrated [sic] claimant meets the first prong of listing
12.05C." (R. 20). The ALJ noted plaintiff took no psychotropic
medication and required no mental health treatment while he was
incarcerated. Id. The ALJ found that plaintiff has a severe
impairment of "borderline intellectual functioning/mild mental
retardation not established prior to age 22." (R. 22, finding
#2). He found plaintiff's impairments do not meet or medically
equal a listing. Id., finding #3.

### C.   Analysis

The ALJ determined that plaintiff does not meet or equal
Listing 12.05(C) because plaintiff has not shown evidence of
onset of mental retardation before age twenty-two. However, the
Verbal IQ score of 69 is itself some evidence of mental
retardation before age twenty-two. Plaintiff cites cases from
the Fourth, Eighth, and Eleventh Circuits for the proposition
that IQ is relatively constant and an IQ score after age twenty-
two is evidence of an individual's IQ being the same before age
twenty-two. (Pl. Br., 15)(citing Luckey v. Dep't of Health &
Human Serv., 890 F.2d 666 (4th Cir. 1989)("in the absence of any
evidence of a change in a claimant's intelligence functioning, it

must be assumed that the claimant's IQ had remained relatively constant."); Sird v. Chater, 105 F.3d 401 (8th Cir. 1997)(citing Luckey); and Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001)(adopting a presumption that IQ remains constant absent evidence of a change in intellectual functioning)).

The Tenth Circuit has not addressed the issue whether mental retardation may be presumed to have manifested during the developmental period.  However, it has noted that circuit courts have liberally construed the early manifestation requirement whereby a claimant "is not required to affirmatively prove that he was mentally retarded prior to reaching the age of twenty two so long as there was no evidence that claimant's IQ had changed." McKown v. Shalala, No. 93-7000, 1993 WL 335788, at *3 (10th Cir. Aug. 26, 1993).

Here, plaintiff presented evidence tending to establish that his condition meets each of the three elements of Listing 12.05(C):  (1) mental retardation manifest before age twenty-two, (2) IQ of 60 through 70, and (3) other "severe" impairments. Plaintiff presents evidence:  (1) that mental retardation manifest before age twenty-two may be presumed where there is an IQ within the applicable range and no evidence IQ has changed after age twenty-two, (2) that he has a verbal IQ of 69, and (3) he has other "severe" impairments of degenerative joint disease and personality disorder.  Thus, to be affirmed, the

-12-

decision must establish that at least one of the elements upon which plaintiff's claim is based is not supported by the evidence.

The Commissioner argues that although plaintiff's IQ is seventy or below, plaintiff has not shown that he has been diagnosed with mental retardation and, therefore, cannot meet or equal the listing.  (Comm'r Br. 4-5)(stating "Dr. Boraks never diagnosed Plaintiff with mental retardation despite the fact that he noted Plaintiff's 69 verbal score was at the upper end of the retarded range").  But, the decision does not rely upon this rationale, the ALJ did not state that plaintiff is not <u>presently</u> mentally retarded or diagnosed as mentally retarded, rather, he stated the evidence does not support <u>manifestation before age twenty-two</u>.  (R. 17).  He stated Dr. Boraks's test results do not demonstrate plaintiff meets the first prong of Listing 12.05(C) because "there is <u>no evidence</u> of mental retardation <u>prior to age 22</u>."  (R. 20)(emphases added).  At step two, he found plaintiff has a severe impairment of "borderline intellectual functioning/<u>mild mental retardation, not established prior to age 22</u>."  (R. 17)(emphasis added).  The ALJ's statements establish that he considered plaintiff to be mentally retarded at the present time.  He found the listing not met, however, because there is <u>no evidence</u> of mental retardation before age twenty-two. This finding ignores the fact that mental retardation after age

-13-

twenty-two is some evidence of mental retardation before age
twenty-two.  In such a case, what is necessary to break the link
between mental condition before and after age twenty-two is to
point to record evidence that deficiencies in plaintiff's
intellectual or adaptive functioning began after age twenty-two
or that the impairment was not manifest before age twenty-two.
Hodges, 276 F.3d at 1269 (where there is evidence of mental
retardation after age twenty-two, Commissioner may present
evidence to rebut the presumption that the impairment also
existed prior to age twenty-two).

    The Commissioner also implies that Dr. Boraks's Verbal IQ
score is invalid (Comm'r Br., 6)("ALJ properly determined that
the IQ scores reported by Dr. Boraks were not credible evidence
of Plaintiff's intellectual functioning"), and argues that even a
valid IQ score is not conclusive evidence of mental retardation
when the score is inconsistent with the other evidence in the
record.  (Comm'r Br., 6).  This argument fails for several
reasons.  First, as discussed above the ALJ accepted that
plaintiff is presently mildly mentally retarded, and the score is
consistent with the ALJ's finding.

    Second, the ALJ's finding regarding validity is unclear.
The ALJ stated, "Dr. Boraks, . . . gave testing results may be
accurate, [sic] but based on the evidence as a whole, and the
fact that there is no evidence of mental retardation prior to age

-14-

22, the undersigned finds Dr. Boraks' testing results do not
demonstrated [sic] claimant meets the first prong of listing
12.05C." (R. 20)(emphases added). The sentence is difficult to
comprehend on a basic level because of grammatical and
typographical errors. Beyond that, the ALJ did not state whether
he found the IQ scores valid or invalid. His statement that the
testing results may be accurate implies that he would accept them
as valid, at least for purposes of his decision. However, his
use of the contrasting conjunction "but" and his finding that
"Dr. Boraks' testing results do not demonstrated [sic] claimant
meets the first prong of listing 12.05C," might be viewed as
implying that he found the test results invalid.

Moreover, the ALJ's statement regarding the "first prong of
listing 12.05C," adds to the confusion. The statement might be
understood to state plaintiff's impairment did not meet the
diagnostic description of mental retardation in the introductory
paragraph for the listing. It might also be read in the sense
used in plaintiff's brief and in many court cases. In such
cases, the "first prong" refers to the requirement of a "valid
verbal, performance, or full scale IQ of 60 through 70," and the
ALJ's statement might be understood to find Dr. Boraks's IQ
scores invalid. The court cannot tell the sense in which the
ALJ used the phrase. At step three, the ALJ found plaintiff does
not meet or equal Listing 12.05(C) because the evidence does not

establish the criteria of the listing's introductory paragraph--
onset of mental retardation before age twenty-two.  (R. 17).  The
statement at issue, however, appears in the ALJ's discussion
relating to his credibility determination and RFC assessment and
is not particularly relevant to that discussion, whichever
meaning is understood.  The court will not evaluate the evidence
and supply a rationale not clearly used by the ALJ.

Finally, the ALJ did not use the rationale presented in the
Commissioner's brief, and the court may not "create post-hoc
rationalizations to explain the Commissioner's treatment of
evidence when that treatment is not apparent from the
Commissioner's decision itself."  Grogan v. Barnhart, 399 F.3d
1257, 1263 (10th Cir. 2005) (citing Allen v. Barnhart, 357 F.3d
1140, 1145 (10th Cir. 2004); and SEC v. Chenery Corp., 318 U.S.
80, 87 (1943)); see also, Knipe v. Heckler, 755 F.2d 141, 149
n.16 (10th Cir. 1985).  Thus, the court may not affirm on the
basis of the Commissioner's argument, which was not the basis for
the ALJ's decision.

There may be record evidence from which to find, as the
Commissioner argues, that plaintiff has not been diagnosed with
mental retardation, but the ALJ did not make that finding.  There
may be evidence from which to find that Dr. Boraks's IQ scores
are not valid or do not show that plaintiff is mentally retarded,
but the ALJ did not make those findings (or if he did, his

finding is ambiguous, uncertain, and not ascertainable by the court).  There may even be evidence from which to find that the onset of plaintiff's mental impairment was not manifest before age twenty-two, but the evidence does not support the ALJ's rationale that there is <u>no evidence</u> of mental retardation prior to age twenty-two.  The ALJ failed to properly articulate his findings, and the court may not weigh the evidence and provide findings which are supported by substantial evidence on the record as a whole.  Remand is necessary for the Commissioner to determine whether plaintiff's condition meets or equals Listing 12.05(C) and to explain how the evidence on the record as a whole supports the decision, recognizing that a valid IQ score of seventy or less established after age twenty-two is, nonetheless, some evidence of an onset of mental retardation before age twenty-two.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that JUDGMENT be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case to the Commissioner for further proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this

recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 19th day of March 2007, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**